IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff-Respondent,

vs.                                             CIVIL NO. 08-344 MV/LFG
                                                   CRIM. NO. 03-2112 MV

JOSE FRANCISCO DIAZ,

        Defendant-Movant.

**MAGISTRATE JUDGE'S FINDINGS
AND RECOMMENDED DISPOSITION**[1]

**Findings**

    1. This is a proceeding on a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, filed March 27, 2008. Movant Jose Francisco Diaz ("Diaz") attacks the sentence entered by the United States District Court for the District of New Mexico in <u>United States v. Diaz</u>, No. CR 03-2112 MV.

    2. On February 23, 2005, Diaz was convicted following a jury trial on Count II of a superseding indictment, charging him with conspiracy to possess with intent to distribute 1000 kilograms and more of marijuana within 1000 feet of a school and within 1000 feet of a truck stop, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846, 849(a), and 860(a). Judgment was entered October 6, 2005.[2] Diaz was sentenced to a term of imprisonment of 168 months, followed by ten

---

[1] Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations. **A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.**

[2] An Amended Judgment was entered November 7, 2005, to correct a clerical error.

years of supervised release. [Docs. 558, 568 in CR 03-2112 MV].[3]

    3. Diaz appealed his conviction to the United States Court of Appeals for the Tenth Circuit. On January 3, 2007, the Tenth Circuit entered an order affirming the conviction. United States v. Diaz, 213 Fed. Appx. 647 (10th Cir. 2007).

    4. Diaz filed this § 2255 Motion to Vacate on March 27, 2008. He alleges ineffective assistance of counsel at sentencing, based on allegations that his trial attorney:

> (1) failed to re-advocate Diaz's eligibility for the safety valve at the second sentencing hearing;
>
> (2) did not move for a reduction in sentence under Booker;
>
> (3) remained silent at the sentencing hearing regarding safety valve and a four-level reduction;
>
> (4) failed to raise the issue of over-representation of criminal history; and
>
> (5) failed to argue that the term of supervised release resulted in a sentence exceeding the statutory maximum.

Diaz also raises the issue that his sentence was illegal, because the period of supervised release extended the sentence beyond the statutory range and the sentence is therefore void for lack of jurisdiction. Diaz asks that counsel be appointed for him and that he be granted a new sentencing hearing and resentenced to time already served.

    5. The United States filed a Response [Doc. 6] to the Motion to Vacate, asking the Court to deny the Motion. Diaz filed his Reply [Doc. 7]. The Motion to Vacate is now fully briefed and ready for ruling. The Court finds that no evidentiary hearing is necessary.

Ineffective Assistance of Counsel

    6. To establish ineffective assistance of counsel, Diaz must make a two-pronged showing; (1) that counsel's performance was constitutionally defective; and (2) that the deficient performance prejudiced his defense in that counsel's errors were so serious as to deprive the defendant of a fair

---

[3] Further references to documents included in the criminal case, United States v. Diaz, CR 03-2112 MV, will be cited herein in the format "CR Doc. __." References to documents filed in this civil action on Diaz's Motion to Vacate will be referred to simply as "Doc. __."

trial with a reliable result. Strickland v. Washington, 466 U.S. 668, 687 (1984). To prove deficient performance, Diaz must overcome the presumption that counsel's conduct was constitutionally effective. Duvall v. Reynolds, 139 F.3d 768, 777 (10th Cir. 1998). Scrutiny of counsel's performance must be "highly deferential" and must avoid the distorting effects of hindsight. Miles v. Dorsey, 61 F.3d 1459, 1474 (10th Cir. 1995). In order to be found constitutionally ineffective, counsel's performance must be shown to have fallen below an objective standard of reasonableness. Strickland, at 687-88. In addition, the burden is on petitioner to show prejudice – that is, that "there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." Id., at 694.

7. As noted above, Diaz asserts five grounds in support of his assertion that counsel was constitutionally ineffective. The Court will address each ground separately.

*Ground 1: Ineffective Assistance in Failing to Re-Assert Argument for Safety Valve*

8. Diaz asserts that his attorney did not adequately represent him at sentencing, because he failed to raise anew the "safety valve" issue, after the judge lowered Diaz's criminal history from Category II to Category I.

9. At the initial sentencing hearing on August 10, 2005, Diaz's attorney noted his client's "criminal history is such that under any scenario, he is not eligible for the safety valve. I mean to say that he's got two criminal history points, and that alone takes him out of the statutory provisions for the safety valve. So, he is not eligible for that." [Transcript of Aug. 10, 2005 Sentencing Hearing, at 11-12].[4]

10. As discussed below under the heading "Ineffective Assistance in Failing to Raise Over-Representation of Criminal History," at the initial sentencing hearing, Judge Vázquez *sua sponte* stated that she thought Diaz's criminal history was over-represented in the presentence report and she was inclined to apply a downward departure. When the Government objected to her proposed

---

[4]The August 10, 2005 Sentencing Hearing transcript is hereinafter cited in the format: "Tr. SH Aug. 10, at __."

finding of over-representation, she continued the hearing to allow the Government to present its position on the question of possible reduction in the criminal history category. [Id., at 28-31].

11. When the hearing reconvened on October 6, 2005, the Court heard arguments from the parties and made a finding that the criminal history had been over-represented. She then lowered Diaz's criminal history from Category II to Category I. [Transcript of October 6 Sentencing Hearing, at 17].[5]

12. Diaz now asserts that his attorney was ineffective in failing to reassert the safety valve issue at the reconvened sentencing hearing on October 6, after the Court found that Category I was the appropriate criminal history category.

13. The "safety valve" provision of the Sentencing Guidelines provides that the court shall impose a sentence in accord with the applicable guideline without regard to the statutory minimum sentence, if the defendant meets certain criteria including the following: "the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines before application of subsection (b) of § 4A1.3 (Departures Based on Inadequacy of Criminal History Category)." U.S. Sentencing Guidelines Manual § 5C1.2(a)(1) (2005). Diaz was charged with three criminal history points in the presentence report; this was the basis for counsel's statement at the August 5 hearing that Diaz was not eligible for safety valve consideration.

14. Section 4A1.3 of the Guidelines, referenced in the safety valve section, permits a downward departure "[i]f reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." In this case, Judge Vázquez proceeded under § 4A1.3, citing that section in finding that "a criminal history category of II significantly overrepresents the seriousness of defendant's criminal history and the likelihood that he will commit further crimes." [Tr. SH Oct. 6, at 17].

---

[5]The October 6, 2005 Sentencing Hearing transcript is hereinafter cited in the format: "Tr. SH Oct. 6, at __."

15.  The fact that the sentencing judge determines that a downward departure is appropriate under § 4A1.3 does not resurrect a defendant's eligibility for safety valve treatment.  Section 5C1.2 provides that the number of criminal history points is determined "under the sentencing guidelines *before application of subsection (b) of § 4A1.3* [emphasis added]."  In this case, Diaz was charged with three criminal history points before Judge Vázquez applied § 4A1.3.  As the Tenth Circuit noted in United States v. Owensby, 188 F.3d 1244, 1246 (10th Cir. 1999):

> Even assuming that the district court had in fact reduced Owensby's criminal history category to I, we reject Owensby's argument that a defendant's eligibility for the safety valve provision may be based on a defendant's reduced criminal history category as determined by the sentencing court under § 4A1.3 . . . . [U]nder § 4A1.1, points are assessed based on objective factors related to a defendant's prior criminal record.  A court may subsequently determine under § 4A1.3 that a defendant's criminal history point total (and thus his corresponding criminal history category) overstates the seriousness of his criminal history, and may subsequently depart downward from the applicable guideline range to impose a sentence consistent with a range reflecting a more appropriate criminal history category.  That fact, however, does not alter the original assessment of the defendant's criminal history points.

The Owensby court concluded that while the sentencing court has discretion to determine whether a particular Category accurately reflects the defendant's criminal history, the court does not have discretion to re-calculate the defendant's criminal history points.  Id., at 1246-47.

16.  Thus, there was no error on counsel's part in failing to raise the safety valve issue after the Court made a downward departure in criminal history category, because such an argument is legally unsupportable and would necessarily have been rejected by the Court.  Failure to raise a meritless argument does not constitute ineffective assistance of counsel.  United States v. Kramer, 168 F.3d 1196, 1202 (10th Cir. 1999); United States v. Cook, 45 F.3d 388, 392-93 (10th Cir. 1995).

17.  The Court rejects Diaz's first charge of ineffective assistance.

*Ground 2: Ineffective Assistance in Failing to Assert Argument Under* Booker

18.  Diaz next argues that counsel "dropped the ball" [Doc. 2, at 7] in the middle of his argument for a mandatory minimum sentence under United States v. Booker, 543 U.S. 220 (2005) (holding that the Sentencing Guidelines are advisory rather than mandatory, and while a sentencing

court should consider Guideline ranges, it should also tailor the sentence in light of the factors set forth in 18 U.S.C. § 3553(a)).

19. Diaz points to a colloquy between his attorney and the trial judge at the initial August 10, 2005 sentencing hearing. Diaz's counsel argued, "we're also asking the Court to look beyond the guidelines to the statute involved, 3553, under the section of disparity of sentences, and sentence Mr. Diaz according to his level of culpability, relative to the other individuals involved in this case. I've asked the Court, in my sentencing memorandum, to consider sentencing him to a mandatory minimum ten years . . . ." [Tr. SH Aug. 10, at 13]. Counsel requested that the Court apply Booker, and utilize the "disparity of sentences" factor of 18 U.S.C. § 3553(a)(6), to adjust Diaz's offense level to 31, which would put him in a sentencing range of 121 to 151 months. [Tr. SH Aug. 10, at 14].

20. At this point, the judge said, "You didn't submit anything along those lines," to which Diaz's attorney responded, "Excuse me, Your Honor?" The transcript then indicates that Judge Vázquez conferred with a probation officer for an unstated period of time, after which the judge asked counsel, "Do you have anything else?" Counsel responded "I have nothing at this time, your Honor." [Tr. SH Aug. 10, at 14-15].

21. Diaz contends that this exchange demonstrates a failure on the part of his attorney to press the Booker argument. Diaz appears to argue that Judge Vázquez pointed out to defense counsel that he had not previously raised the Booker / 3553 argument in any written submission and that she would not entertain the argument at the hearing. At that point, Diaz contends, counsel should have pressed the issue, despite having failed to present the argument earlier.

22. The Court rejects this interpretation of what occurred at the hearing and prior thereto. Counsel did, in fact, include the Booker / 3553 argument in a sentencing memorandum submitted to the Court five days prior to the hearing. [Doc. CR 508]. Counsel proceeded at the hearing to raise the issue in oral argument. Thus, when the judge said, "You didn't submit anything along those lines" [Tr. SH Aug. 10, at 14], it appears to have been more a question than a statement.

Immediately after that statement, the judge conferred with the probation officer, and the matter was cleared up. Thus it seems that, after some initial confusion, the judge determined that Diaz's counsel had indeed submitted the Booker / 3553 argument, and that the argument would be considered in the sentencing determination. This was further clarified later in the hearing, as discussed below. There was no need for counsel to continue arguing the issue at this point, and the fact that Diaz's counsel said nothing further does not constitute ineffective assistance of counsel.

23. Diaz characterizes the situation as follows: "But, having once begun the argument for reduction, and then dropping the ball when the Court offers helpful hints, and without submitting any supporting arguments in writing when he had an opportunity to do so, cannot be excused as 'reasonably effective assistance' . . . or 'sound trial strategy.'" [Doc. 2, at 7]. Diaz is incorrect on the facts; counsel did submit the supporting arguments in writing prior to the hearing and did all that was reasonably required of him to present this issue to the Court.

24. Diaz fails to establish that his counsel was constitutionally ineffective for failing to assert a Booker argument. Counsel did, in fact, assert such an argument.

*Ground 3: Ineffective Assistance in Remaining Silent at Sentencing Hearing*

25. Diaz next argues that counsel was ineffective because of a colloquy between the Court and the prosecutor concerning the Booker argument discussed above, which defense counsel "sat through like a 'bump on a log,' and did nothing about." [Doc. 2, at 8].

26. Diaz contends that when Judge Vázquez stated this was a "tough" case because of the disparity issue, in that the sentence calculated for Diaz under the Guidelines was approaching that of a co-defendant who clearly had a larger role in the operation, "defense counsel should have jumped at the chance to reraise the safety valve and his four-level reduction arguments. Yet, defense counsel remained completely silent." [Doc. 2, at 9]. And, Diaz argues further, after counsel for the Government agreed with the judge that it was a "tough" call, "[a]t this point, defense counsel had yet another opportunity to 'advocate the defendant's cause,' but did and said nothing." [Id.].

27. It would have been inappropriate and self-defeating for defense counsel to "jump" in and

continue to raise arguments that he had already presented both in writing and orally, and which the judge clearly took seriously and wanted the Government to address. Indeed, Judge Vázquez presented to the Government, for its comments, the argument raised in the sentencing memorandum presented by Diaz's counsel. Immediately after the judge ascertained that the defense had indeed raised an issue under Booker and § 3553, an issue she was clearly concerned with, she turned to prosecutor Kenneth Gonzales and asked him to state the Government's case with respect to the issue just raised by Diaz's counsel. The following conversation ensued:

> MR. GONZALES: Your Honor, we are asking the Court to accept the recommendation and guideline applications that are laid out in the presentence report.
>
> THE COURT: This one gets a little tough, though, Mr. Gonzales. You know, it really gets a little tough, because the sentences are getting a little close here to Mr. Torres-Laranega, and . . . we're in a different situation when you first brought this case, because Booker is now here [Booker was decided January 12, 2005, between the time the indictment was handed down charging Diaz, and the time of sentencing] ....
>
> And this is getting a little tough ... I have difficulties with the application of the guidelines as they've been applied to Mr. Diaz ....
>
> But here is what I'm worried about, Mr. Gonzales, and I know that you're a reasonable man, and I want to hear from you, but I want you to take off your technical guideline hat, and I want you to think in terms of the global picture here.
>
> Talk to me in terms of how it is appropriate to give Mr. Diaz a sentence that is so close to Mr. Torres-Laranega's sentence ....
>
> If you could address that, I'd really appreciate it .... I've read everybody's briefs, and I've read my own summaries of the trial transcript ...
>
> And I'm trying to compare his level of culpability with that of Mr. Torres-Laranega, so that in my own conscience, I can see the justification for a sentence that comes close to Mr. Torres-Laranega, and I'm having a little trouble here. So help me with this if you could.
>
> MR. GONZALES: And so, now I am in a tough spot as well, your Honor ....

[Tr. SH Aug. 10, at 15-18].

28. This colloquy demonstrates that the Court was well aware of the change that the Booker decision has brought to sentencing issues and was sensitive to the question of disparity as it related to Diaz's situation, a question raised prior to the hearing in the sentencing memorandum filed by Diaz's counsel. Judge Vázquez was, in effect, setting forth the arguments that Diaz's attorney had raised and giving the Government the chance to comment on them. There was no reason for Diaz's counsel to "jump" in at this point; indeed, to do so would have been counterproductive.

29. There was no ineffective assistance in counsel's silence under these circumstances.

*Ground 4: Ineffective Assistance in Failing to Raise Over-Representation of Criminal History*

30. Diaz next argues that counsel was ineffective in failing to raise the issue of over-representation of his criminal history. The Court raised this issue *sua sponte*, saying that the "idea was given to" her by one of the probation officers. [Tr. SH Aug. 10, at 28].

31. Judge Vázquez noted at the August 10 hearing that Diaz's criminal history, as calculated under the Guidelines and presented in the presentence report, included two misdemeanor offenses from eleven years earlier. She said she was inclined to disregard these convictions and lower the criminal history from Category II to Category I. As noted above, she then continued the sentencing hearing to allow the Government an opportunity to respond to her tentative ruling reducing the criminal history. The Government did so, filing a Sentencing Memorandum [CR Doc. 543], to which Diaz's counsel submitted a Response [CR Doc. 556]. When the sentencing hearing recommenced on October 6, 2005, Judge Vázquez made the finding that the criminal history was over-represented, and she reduced Diaz's criminal history category to Category I.

32. Diaz argues that his attorney should be found ineffective for failing to raise the over-representation issue on his own. Indeed, counsel at first responded to the Court's suggestion that the criminal history category could be reduced by saying, "Your Honor, I don't think so." [Tr. SH Aug.10, at 29]. While counsel's advocacy on this issue was not optimal, "effective assistance does not mean . . . flawless counsel." Brady v. United States, 433 F.2d 924, 925 (10th Cir. 1970). In this situation Diaz was not prejudiced by counsel's failure to raise the over-representation issue, because

9

the Court's *sua sponte* action in finding that Category I more accurately represented Diaz's criminal history resulted in a lower sentence, and no harm was done.

33. Diaz argues that "there is nothing in any of the Supreme Court's decisions which limits a finding of ineffectiveness of counsel to **only** when a defendant is injured as a proximate cause of defense counsel's ineffectiveness" (emphasis in original). [Doc. 2, at 12]. This is an incorrect statement of the law. As noted above, in order to make out a case of ineffective assistance the petitioner must show not only that counsel's performance fell below an objective standard of reasonableness, but also that "there is a reasonable probability but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, at 694. The requirement that a petitioner show that he was prejudiced by counsel's errors is applicable to errors or omissions occurring in the sentencing context. United States v. Cox, 83 F.3d 336, 340-341 (10th Cir. 1996) ("defendant must show both that counsel's performance was deficient and that this deficient performance prejudiced his defense").

34. Diaz cannot make the required showing of prejudice with respect to non-assertion of the over-representation issue, as counsel's failure to raise it, before the judge raised it *sua sponte*, made no difference in the outcome. The judge noted the issue on her own and gave the parties an opportunity to brief the issue. Diaz's attorney filed a memorandum setting forth the case for over-representation, and the judge made a finding lowering the criminal history category, and Diaz ended up with a shorter sentence. Under these facts, there was no prejudice to Diaz.

35. Diaz argues that Strickland provides that, "in certain Sixth Amendment contexts, prejudice is presumed" [Doc. 2. at 12], *quoting* Strickland, at 692. The Court in Strickland notes, however, that the range of cases in which prejudice is presumed are extremely narrow; they include situations where a defendant is actually or constructively denied all representation by counsel, or where counsel operates under a conflict of interest. In all other situations, the petitioner must demonstrate that he was prejudiced by counsel's actions. Id., at 693:

> Conflict of interest claims aside, actual ineffectiveness claims

> alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice . . . . Attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. They cannot be classified according to likelihood of causing prejudice . . . . Even if a defendant shows that particular errors of counsel were unreasonable, therefore, the defendant must show that they actually had an adverse effect on the defense.

36.  This is not a situation of conflict of interest, nor a complete absence of representation. The question whether Diaz's criminal history might be over-represented occurred to the judge at during the sentencing hearing. She noted, shortly after the hearing was reconvened following a lunch break, that the idea had been proposed by one of the probation officers, and she referred to it later as a "spur-of-the-moment thought" that came up "during the hearing." [Tr. SH Oct. 6, at 8].

37.  When the judge suggested that Diaz's criminal history could perhaps be reduced to Category I, and Diaz's attorney responded "Your Honor, I don't think so," it appears from the transcript that counsel was caught by surprise and responded accordingly. [Tr. Aug. 10, at 29]. It is clear, however, that counsel did not abandon his client's interests and argue the Government's case. Indeed, on more extensive reflection, counsel filed a Response to the United States' Sentencing Memorandum [CR Doc. 556], setting forth the argument for a downward departure based on over-representation of criminal history, and he added supplemental case authority at the reconvened sentencing hearing. Thus, Diaz was not deprived of counsel on the question of over-representation of his criminal history, there was no conflict of interest, and the judge's actions ensured that Diaz was not prejudiced in this regard. To the contrary, his memorandum was successful in securing a beneficial ruling on the over-representation issue.

38.  Diaz failed to demonstrate that he was prejudiced by counsel's actions with respect to the issue of over-representation of criminal history; therefore, there is no basis for finding ineffective assistance on this ground.

### *Ground 5: Ineffective Assistance in Failing to Raise Supervised Release Argument*

39.  Diaz's final allegation of ineffective assistance involves counsel's failure to argue that the sentence Diaz received exceeded the maximum allowed by the Guidelines and statutes, because

the term of supervised release ordered by the Court extended his sentence beyond the permissible range.

40. At the reconvened sentencing hearing on October 6, 2005, the Court adopted the factual findings of the presentence report, except as to criminal history category which was lowered to Category I. The Court found an offense level of 35 and, considering the Guidelines and the sentencing factors of § 3553, determined that the "advisory guidelines" range of 168 to 210 months was appropriate. [Tr. SH Oct. 6, at 17-18]. The judge sentenced Diaz to a term of imprisonment at the low end of the range, 168 months, and imposed a term of supervised release of ten years (*i.e.*, 120 months). Diaz argues that the ten-year term of supervised release resulted in an actual sentence of 288 months, which is outside the advisory guideline range, and this renders his sentence illegal and void. He faults counsel for failing to raise this argument.

41. Diaz's contention of an illegal sentence is based on a statement in United States v. Einspahr, 35 F.3d 505, 507 (10th Cir. 1994), to the effect that "[t]he confinement period and any subsequent period of parole supervision are best understood as two parts 'of a single indivisible sentence.'" The Einspahr case arose in a different context from that of the present case. The defendant in that case was sentenced in 1986, a time when the parole was still possible in the federal system, and the case involved the interaction between periods of probation and parole. In November 1987, parole was abolished when the Sentencing Reform Act established the system of sentencing guidelines.

42. The general provision for supervised release is found in 18 U.S.C. § 3583, which provides that the sentencing court may include as part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment. Further, the court *must* include supervised release "if such a term is required by statute."

43. The statutes under which Diaz was convicted require a term of supervised release "in addition to" the term of imprisonment. 21 U.S.C. §§ 841(b)(1)(A). Imposition of a term of supervised release does not extend a sentence beyond the statutory maximum or otherwise render

it illegal.  United States v. Robinson, 62 F.3d 1282 (10th Cir. 1995).  Robinson cites a number of opinions from other courts likewise holding that supervised release does not illegally extend the basic sentence, including United States v. Butler, 895 F.2d 1016, 1017-18 (5th Cir. 1989), in which the court noted:

> Butler argues that the imposition of a period of supervised release where the statutory maximum period of confinement has also been imposed constitutes the imposition of a sentence greater than that authorized by Congress.  Butler contends that such a sentence results in cruel and unusual punishment in violation of the Eighth Amendment to the federal Constitution and deprives him of his liberty without due process in violation of the fifth amendment.  Butler cites no authority for this novel argument, and the relevant statutes reveal this claim's lack of merit ....  Congress developed the supervised release program in order:
>
>> [T]o ease the defendant's transition into the community after the service of a long prison term for a particularly serious offense, or to provide rehabilitation to a defendant who has spent a fairly short period in prison for punishment or other purposes but still needs supervision and training programs after release.
>
> H.R.Rep. No. 98-1030, 98th Cong., 2nd Sess. 124, reprinted in U.S.Code Cong. & Admin.News 1984, 3182, 3307. The addition of a period of supervised release to a maximum jail sentence does not extend a party's imprisonment; therefore, it cannot create a violation of the maximum prison sentence allowed by statute.

44.  As noted above, a defense attorney's failure to raise a futile argument does not constitute ineffective assistance of counsel.  Tenth Circuit precedent compels the conclusion that Diaz was not subjected to an illegal sentence due to the ten-year period of supervised release; thus, he cannot establish ineffective assistance based on a failure to raise this argument.

<u>Illegal Sentence</u>

45.  As discussed above, counsel was not constitutionally ineffective for failing to raise an issue of "illegal sentence" based on the supervisory release term, because there was no illegality. The Court therefore rejects illegality of the sentence as a separate ground for habeas relief.

**Recommended Disposition**

That the Motion to Vacate be denied and the case be dismissed with prejudice.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
Chief United States Magistrate Judge